Louis V. **BALDOVIN, Jr., Regional Director of Region Twenty-three of the National Labor Relations Board, for and on behalf of the National Labor Relations Board,**

v.

**INTERNATIONAL LONGSHOREMENS ASSOCIATION LOCAL UNION NO. 20, AFL–CIO.**

Civ. A. G–86–116.

United States District Court,
S.D. Texas,
Galveston Division.

April 15, 1986.

Louis V. Baldovin, Jr., Regional Director, N.L.R.B., Robert S. Breaux, Houston, Tex., for petitioner.

Sidney Ravkind, Houston, Tex., for respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HUGH GIBSON, District Judge.

Petitioner, Regional Director of the National Labor Relations Board (Board), has asked this Court to enjoin picketing activities conducted by the respondent, International Longshoremen's Association Local Union No. 20 (Union). The Court heard the evidence on the Board's petition on April 14, 1986. Having considered counsel's arguments and all evidence presented at the show-cause hearing, the Court concludes that the Board's petition must be DENIED. In accordance with F.R.Civ.P. 52, the Court now makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Sullivan Enterprises, Inc., a Texas corporation, is engaged in the business of loading and unloading vessels at the Port of Galveston.

2. Respondent Union is the official collective bargaining representative dealing with several employers providing longshore work in the vicinity.

3. On or about March 13, 1986, Sullivan assigned the work of unloading barite from the ocean-going vessel ARGUS to some twenty employees at Sullivan's West Port Galveston facilities. These employees performed like work from the vessel RADNICK when this vessel arrived on or about April 7, 1986.

4. These twenty employees are not Union members. At no time has the Board certified the Union as the official collective bargaining representative for Sullivan's employees. Nor has the Board directed Sullivan to bargain with the Union.

5. Sullivan pays its employees lower wages than area employers bound by Union collective bargaining contracts.

6. On or about February 3, 1986, the Union posted a picket sign near the entrance of Sullivan's West Port Galveston facility, 4800 Old Port Industrial Boulevard, Galveston, Texas. The picket sign contained the following message:

INFORMATIONAL PICKET NEWPORT MARINE TERMINAL AND OR SULLIVAN ENTERPRISES INTENDS TO PAY SUBSTANDARD WAGES AND BENEFITS TO EMPLOYEES ENGAGED IN LONGSHORE WORK AT THIS FACILITY. WE DO NOT HAVE A CURRENT LABOR DISPUTE WITH ANY OTHER EMPLOYER AT THIS FACILITY. LOCAL 20 & 1665 INTERNATIONAL LONGSHOREMEN'S ASS'N. AFL–CIO

7. On March 24, 1986, Sullivan filed a charge with the Board, alleging that the Union had committed unfair labor practices. Sullivan charged that the Union's purpose was to pressure Sullivan into assigning its work to members of the Union.

8. On or about March 28, 1986, the Union suspended the picketing to clarify its purpose. The Union then issued a press release, assuring that it did not seek a contract with Sullivan. According to the press release, the purpose of the picketing was to protest Sullivan's intent to pay a lower wage than that prevailing on the Galveston waterfront.

9. On or about March 31, 1986, the picket sign was changed as follows:

INFORMATIONAL PICKET SULLIVAN BROTHERS AND OR NEWPORT MARINE IS PAYING AREA SUBSTANDARD WAGES AND BENEFITS TO LONGSHOREMEN. WE DO NOT HAVE A LABOR DISPUTE WITH ANY OTHER EMPLOYER AT THIS FACILITY *AND WE DO NOT SEEK THE JOBS OR A CONTRACT WITH THE SULLIVAN BROTHERS.* WE ASK YOUR SUPPORT. IT COULD HAPPEN TO YOU. ILA LOCAL # 20

*(Emphasis added.)*

10. The picketing was conducted peacefully at all times in accordance with a state court injunction prohibiting violent and disruptive conduct.

11. On April 8, 1986, the NLRB asked this Court to enter a preliminary injunction against the Union pending the Board's final adjudication of the controversy.

### Conclusions of Law

1. This Court has subject matter jurisdiction and is empowered to grant injunctive relief pursuant to 29 U.S.C. § 160(*l*).

2. The Board relies on Section 8(b)(4)(i)(ii) of the National Labor Relations Act, 29 U.S.C. § 158. This section prohibits a labor organization from threatening a business affecting commerce where the object thereof is to force or require the employer to assign a particular work to Union members rather than to employees of any other class.

3. The Union, on the other hand, relies on Section 8(b)(7) of the National Labor Relations Act. This section prohibits a labor organization from picketing any employer, where an object thereof is to force or require the employer to recognize or bargain with a labor organization as the representative of his employees.

4. The two principal issues before a district court in a proceeding for injunctive relief under 29 U.S.C. § 160 are 1) whether there exists reasonable cause to believe that unfair labor practices have been committed; and 2) whether the requested relief is just and proper. *Kaynard v. Palby Lingerie, Inc.*, 1980, 625 F.2d 1047 (2d Cir.1980). *See also Lewis v. New Orleans Clerks & Checkers, ILA*, 724 F.2d 1109, 1114–1115 (5th Cir.1984). Thus, in granting an injunction against an alleged unfair labor practice, the district court must first find that the Board had reasonable cause to believe the charges filed were true. *Compton v. National Maritime Union of America, AFL–CIO*, 533 F.2d 1270 (1st Cir.1976). A "reasonable cause" means a reasonable basis upon which the Board could sustain the employer's charge, or a finding that the Board's theory is not insubstantial or frivolous. Thus, this Court must inquire into the substantiality of the Board's position. *Lewis, supra*, at 1115.

5. The Court finds insufficient evidence in the record to justify the Board's belief that the Union has violated Section 8(b)(4)(i)(ii). In judging "reasonable cause", the Court will discern the Union's motive as manifested by the nature of its conduct and activities. The Board has failed to persuade this Court that such conduct and activities were tainted by impropriety.

It is evident that the Union wished to advise the public of Sullivan's wage scales compared to the prevailing local standard. This legitimate purpose was made clear in the Union's various public communications. It is also evident that at the time the Union became engaged in informational picketing, it did not wish to enter a collective bargaining agreement with Sullivan. Thus, the vice guarded by Section 8(b)(7) has not been committed. To avoid the adverse publicity, Sullivan may choose to revise its pay scales without necessarily having to reassign the work. Hence, it is not reasonable to conclude that a possible statutory violation exists any time a labor union publicizes an employer's pay policy in light of union standards.

6. The record did not sufficiently raise a reasonable belief as to the Union's improper motive. Accordingly, the Court concludes that injunctive relief is improper.

7. It is, therefore, ORDERED, ADJUDGED and DECREED that petitioner's application for a preliminary injunction be, and is hereby, DENIED.

8. If any of the foregoing findings of fact constitute conclusions of law, they are adopted as such. If any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.